UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSEPH NAPIERACZ and
CONNIE NAPIERACZ,

        Plaintiffs,

-VS-

VERIZON COMMUNICATIONS, INC.,

        Defendant.

_____/

CASE NO.:

3:18-cv-1017-J-32PDB

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiffs, Joseph Napieracz and Connie Napieracz, by and through the undersigned counsel, and sues Defendant, Verizon Communications, Inc., and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

## INTRODUCTION

1.    The TCPA was enacted to prevent companies like Defendant, Verizon Communications, Inc. (hereinafter, "Verizon" or "Defendant") from invading American citizen's privacy and prevent abusive "robo-calls."

2.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, --US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3.     "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4.     According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5.     This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6.     Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7.     Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the

district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8.      The alleged violations described herein occurred in Clay County, Florida Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9.      Plaintiffs are natural persons, and citizen of the State of Florida, residing in  Middleburg, Clay County, Florida

10.     Plaintiffs are a "consumer" as defined in Florida Statute § 559.55(8).

11.     Plaintiffs are the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

12.     Defendant is a foreign profit corporation with its principal place of business located at 1095 Avenue of the Americas, New York, New York 10036 and which conducts business in the State of Florida through its registered agent, C T Corporation System, located at 1200 South Pine Island Road, Plantation, FL 33324.

13.     The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

14.     Defendant is a "creditor" as defined in Florida Statute §559.55(5)

15.     Plaintiffs are the regular users of their home telephone number at issue, (904) ***-7681.  Plaintiff, Joseph Napieracz, is the regular user, carrier and subscriber of the cellular telephone number at issue, (904) ***-3202.  The Plaintiffs were the called parties and recipients of Defendant's hereinafter described calls.

16.     During the relevant time period, Plaintiff, Joseph Napieracz, did not have any business relationship with Defendant as it relates to his aforementioned cellular telephone.

17.     Defendant placed an exorbitant number of automated calls to Plaintiffs on Plaintiffs' aforementioned telephone numbers, approximately one hundred (100) times, in an attempt to collect on an alleged debt related to Plaintiffs' son's cellular telephone bill.

18.     Defendant attempted to collect an alleged debt from Plaintiffs by this campaign of telephone calls.

19.     Upon receipt of the calls from Defendant, Plaintiffs' caller ID identified the calls were being initiated from, but not limited to, the following telephone number(s): (352) 200-5522, and when that number is called, the caller is met with an automated message stating "Welcome to Verizon Wireless."

20.     Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").  Plaintiffs will testify that they knew it was an

autodialer because of the vast number of calls they received and because when they answered a call from the Defendant, they heard either an extended pause before an agent/representative of the Defendant would come on the line and would receive prerecorded messages from Defendant.

21.     On several occasions since January of 2018, Plaintiffs instructed Defendant's agent(s) to stop calling their telephone numbers.

22.     In or around February of 2018, Plaintiff, Connie Napieracz, received a call from Defendant, was met with an extended pause, was eventually connected to an agent/representative of Defendant, explained to the representative that their son no longer lived at this address, they were not responsible for cell phone bill, the numbers that Defendant was calling were not good numbers for him, and demanded that Defendant stop calling their telephone numbers and to remove Plaintiffs' telephone numbers from their son's account.

23.     During the aforementioned phone conversation in or around February of 2018 with Defendant's agent/representative, Plaintiffs unequivocally revoked any express consent Defendant may have otherwise believed it had for placement of telephone calls to Plaintiffs' aforementioned telephone numbers by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

24.     Each subsequent call from Defendant to Plaintiffs was done so without the "express consent" of the Plaintiffs.

25.     Each subsequent call from Defendant to Plaintiffs was knowing and/or willful.

26.     Similarly, a few days later in or about February of 2018, Plaintiff, Joseph Napieracz, received a call from Defendant, met with an extended pause, was eventually connected to an agent/representative of Defendant, stated that the calls he was receiving were harassing, that Plaintiffs' son did not live with them, explained that his wife had already instructed Defendant to stop calling, and demanded that Defendant cease calling his aforementioned cellular telephone number.

27.     Additionally, on or about March 14, 2018, due to the continued automated calls to their respective telephone numbers, Plaintiff, Connie Napieracz answered another call from Defendant, met with an extended pause, was eventually connected to an agent/representative of Defendant, explained that she had already spoken with someone from their office and requested they stop calling, and again demanded that Defendant stop calling the Plaintiffs respective telephone numbers.

28.     On at least five (5) separate occasions, Plaintiffs have either answered a call from Defendant or returned a call to Defendant regarding their son's account, held the line to be connected to an agent/representative, and demanded that Defendant cease placing calls to their aforementioned telephone numbers.

29.     Each of Plaintiffs' requests for the harassment to end were ignored.

30.     Defendant intentionally harassed and abused Plaintiffs on numerous occasions by calling multiple times during one day, and on back to back days with such frequency as can reasonably be expected to harass.

6

31.     Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiffs' telephone numbers in this case.

32.     Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiffs' telephone numbers in this case, with no way for the consumer, Plaintiffs, or Defendant to remove the number(s).

33.     Defendant's corporate policy is structured so as to continue to call individuals like Plaintiffs despite these individuals explaining to Defendant they wish for the calls to stop.

34.     Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

35.     Defendant has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

36.     Defendant has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

37.     Defendant corporate policy provided no means for Plaintiffs to have their number(s) removed from Defendant's call list.

38.     Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

39.     Not a single call placed by Defendant to Plaintiffs were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

40.     Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiffs.

41.     From each and every call placed without consent by Defendant to Plaintiffs' telephone numbers, Plaintiffs suffered the injury of invasion of privacy and the intrusion upon their right of seclusion.

42.     From each and every call without express consent placed by Defendant to Plaintiff's, Joseph Napieracz's, cellular telephone, Plaintiff suffered the injury of occupation of his cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's calls.

43.     From each and every call placed without express consent by Defendant to Plaintiff's, Joseph Napieracz's, cellular telephone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

44.     Each and every call placed without express consent by Defendant to Plaintiff's, Joseph Napieracz's, cellular telephone was an injury in the form of a nuisance

and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

45.     Each and every call placed without express consent by Defendant to Plaintiff's, Joseph Napieracz's, cellular telephone resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

46.     Each and every call placed without express consent by Defendant to Plaintiff's, Joseph Naperiacz's, cellular telephone where a voice message was left which occupied space in Plaintiff's phone or network.

47.     Each and every call placed without express consent by Defendant to Plaintiff's, Joseph Napieracz's, cellular telephone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular phone and his cellular phone services.

48.     As a result of the calls described above, Plaintiffs suffered an invasion of privacy. Plaintiffs were also affect in a personal and individualized way by stress, anxiety, and aggravation.

### COUNT I
#### (Violation of the TCPA)

49.     Plaintiff, Joseph Napieracz, fully incorporates and realleges paragraphs one (1) through forty-eight (48) as if fully set forth herein.

50.     Defendant willfully violated the TCPA with respect to Plaintiff, Joseph Napieracz, especially for each of the auto-dialer calls made to Plaintiff's, Joe Napieracz, cellular telephone after Plaintiffs notified Defendant that they wished for the calls to stop.

51.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff's, Joe Napieracz's, cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against VERIZON COMMUNICATIONS, INC. for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

52.     Plaintiff, Joseph Napieracz, fully incorporates and realleges paragraphs one (1) through forty-eight (48) as if fully set forth herein

53.     At all times relevant to this action Defendant is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

54.     Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

55.     Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

56. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiffs respectfully demand a trial by jury on all issues so triable and judgment against VERIZON COMMUNICATIONS, INC. for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT III
### (Violation of the FCCPA)

57. Plaintiff, Connie Napieracz, fully incorporates and realleges paragraphs one (1) through forty-eight (48) as if fully set forth herein

58. At all times relevant to this action Defendant is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

59. Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

60. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

61. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiffs respectfully demand a trial by jury on all issues so triable and judgment against VERIZON COMMUNICATIONS, INC. for statutory

damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/ Shaughn C. Hill*

Shaughn C. Hill, Esquire
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
shill@forthepeople.com
kzhang@forthepeople.com
Florida Bar #: 105998
Attorney for Plaintiffs